UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SANTOS IGLESIAS and MARIA
RAFOSO, his Wife, Individually
and Jointly,

                    Plaintiffs,

v.                                  Case No.   8:09-cv-1608-T-33TGW

J.C. PENNEY CORPORATION, INC., a
Foreign Corporation, licensed to
do business in the State of
Florida,

                    Defendant.

_____/

**<u>ORDER</u>**

This cause is before the Court pursuant to defendant J.C.
Penney Corporation, Inc.'s motion to dismiss plaintiffs'
complaint for material misrepresentation and fraud upon the
court (Doc. # 26), filed on August 19, 2010, and emergency
motion to compel jurat page and for sanctions (Doc. # 36),
filed on November 15, 2010.  For the reasons that follow, J.C.
Penny's motion to dismiss is denied and J.C. Penney's motion
to compel jurat page and for sanctions is granted in part and
denied in part.  Specifically, the Court will not compel
counsel for Mr. Iglesias to turn the jurat page over to J.C.
Penny, the Court will not dismiss this case, but the Court
will require the payment of monetary sanctions to J.C. Penny

1

due to the improper conduct of Mr. Iglesias during discovery in this case.

## I.   Background and Procedural History

This is a negligence action brought by Mr. Iglesias and Ms. Rafoso, his wife, for injuries and damages resulting from a slip and fall incident that occurred on December 23, 2007, at the department store owned and operated by J.C. Penney at the Brandon Town Center Mall in Brandon, Florida. (Doc. # 26 at 1).

On August 19, 2010, J.C. Penney filed its motion to dismiss complaint for material misrepresentation and fraud upon the court. (Doc. # 26). Initially, Mr. Iglesias and Ms. Rafoso did not file a response in opposition to the motion. On September 14, 2010, the Court issued an order (Doc. # 27) warning Mr. Iglesias and Ms. Rafoso that, if they did not respond to the motion by September 20, 2010, the Court would be inclined to grant the motion as an unopposed motion.

On September 20, 2010, Mr. Iglesias and Ms. Rafoso filed a response in opposition to J.C. Penney's motion to dismiss. (Doc. # 28). To enable the Court to issue an informed decision regarding the disposition of J.C. Penney's motion to dismiss, the Court, on October 21, 2010, directed the parties to file the complete deposition transcripts and interrogatory

2

responses of Mr. Iglesias and Ms. Rafosu. (Doc. # 29). On October 22, 2010, J.C. Penney filed the deposition transcripts and interrogatory answers; however, as will be discussed below, the jurat page on the interrogatory answers for Mr. Iglesias was missing. (Docs. ## 30-32). Upon receiving these submissions, the Court scheduled an evidentiary hearing to further evaluate J.C. Penney's motion to dismiss, particularly because Mr. Iglesias and Ms. Rafosu asserted that their English skills are limited. (Doc. # 34).

During the evidentiary hearing on November 9, 2010, the Court directed J.C. Penney to file the signed and notarized jurat page for Mr. Iglesias's interrogatory responses, which was missing from the record. On November 15, 2010, J.C. Penney still had not submitted the jurat page, and the Court entered an order directing J.C. Penney to comply by November 16, 2010. (Doc. # 35). J.C. Penney filed an emergency motion on November 15, 2010, asking the Court to compel Mr. Iglesias and Ms. Rafosu to provide J.C. Penney with the jurat page. (Doc. # 36 at 3). On November 16, 2010, J.C. Penney filed a response to the Court's order, indicating that J.C. Penney was missing the jurat page and reiterating its request that the Court grant its motion to compel the jurat page. (Doc. # 37 at 1-2).

3

II.  <u>**Legal Standard**</u>

A court may dismiss a case with prejudice based on two possible sources of authority: Rule 41(b), or a court's inherent power to regulate litigation and to sanction litigants for abusive practices. <u>Vargas v. Peltz</u>, 901 F.Supp. 1572, 1579 (S.D. Fla. 1995).

Rule 41(b) provides: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b).

The Eleventh Circuit has held that, because dismissal is considered a drastic sanction, a district court may dismiss a case with prejudice only where "there is a 'clear record of delay or willful contempt and a finding that lesser sanctions would not suffice.'" <u>Kilgo v. Ricks</u>, 983 F.2d 189, 192 (11th Cir. 1993) (quoting <u>Goforth v. Owens</u>, 766 F.2d 1533, 1535 (11th Cir. 1985)).

In addition to the authority granted by Rule 41(b), the federal district courts possess the inherent power to sanction fraudulent litigation practices by dismissal. <u>McDowell v. Seaboard Farms of Athens, Inc.</u>, No. 95-609-CIV-ORL-19, 1996 WL 684140, at *2 (M.D. Fla. Nov. 4, 1996). Dismissal is appropriate where clear and convincing evidence demonstrates

4

that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense. <u>Vargas</u>, 901 F.Supp. at 1579.

**III.  <u>Discussion</u>**

   **A.  <u>Motion to Compel Jurat Page</u>**

J.C. Penney asserts that, following the evidentiary hearing, it "analyzed its file and learned that it was missing a copy of the signed and notarized jurat page" for Mr. Iglesias's interrogatory responses. (Doc. # 37 at 1-2). J.C. Penney subsequently requested the jurat page from Mr. Iglesias's attorney, who refused to provide it, citing ethical obligations to his client. (Doc. # 37 at 2). J.C. Penney then twice requested the jurat page directly from Mr. Iglesias, who also did not provide it. <u>Id.</u> at 2.[1] In its emergency motion filed on November 15, 2010, J.C. Penney asks the Court to compel Mr. Iglesias to provide J.C. Penney with

_____

[1] The Court notes that counsel for J.C. Penny should not have directly contacted Mr. Iglesias to request the jurat page, absent consent of Mr. Touger, who represents Mr. Iglesias. Rule 4-4.2 of the Rules Regulating the Florida Bar governs communication with a person represented by counsel.

the signed and notarized jurat page.   (Doc. # 36 at 3).

J.C. Penney asserts that the jurat page is not covered by any privilege and without it, J.C. Penney will be unfairly hampered in the presentation of its defense, leading to undue prejudice.  Id. at 2.   In urging the Court to compel Mr. Iglesias to provide the jurat page, J.C. Penney cites its "substantial need for the jurat page" and its inability to "obtain it by other means[.]"  Id.

The Court does not dispute J.C. Penney's need for the signed and notarized jurat page.[2]  Need, however, is not the issue.  It is not clear whether the jurat page was ever in J.C. Penney's possession or if J.C. Penney simply misplaced the document.   In either scenario, the responsibility for obtaining the properly signed and notarized jurat page in the first instance falls squarely on J.C. Penney's shoulders.

If the jurat page was missing when J.C. Penney initially received Mr. Iglesias's interrogatory responses, J.C. Penney should have noticed this omission and alerted Mr. Iglesias's counsel so he could take steps to remedy the defect.  If J.C. Penney simply misplaced the jurat page, the Court is unwilling

_____

[2] Indeed, it is precisely this document that would have thrust Mr. Iglesias's conduct past the "clear and convincing" threshold necessary to support a dismissal with prejudice for fraud upon the Court, as discussed below.

6

to compel Mr. Iglesias's attorney to remedy J.C. Penney's oversight by acting in a manner that is adverse to his client's interests.  Accordingly, J.C. Penney's motion to compel jurat page is denied.

The Court now turns to J.C. Penney's motion to dismiss for material misrepresentation and fraud upon the Court.

**B.    Motion to Dismiss for Material Misrepresentation and Fraud upon the Court**

J.C. Penney seeks an order of dismissal based on its belief that Mr. Iglesias made material misrepresentations about fundamental facts related to his past and his medical condition to the Court and to his numerous medical providers. (Doc. # 26 at 2).  J.C. Penney supports its motion with medical records, deposition testimony, interrogatory responses (incomplete, as noted above), and other records that show that Mr. Iglesias failed to disclose a subsequent automobile accident that occurred on August 24, 2008, and a federal criminal conviction in 2003, for the transport of illegal aliens.[3]  (Doc. # 26, Def.'s Ex. A-K).

---

[3] Although J.C. Penney mentions in passing that Mr. Iglesias failed to disclose at least one employer that he worked for after the subject accident and is making a lost wage claim (Doc. # 26 at 6), this contention is not supported by any evidentiary exhibits.  Therefore, it falls short of the "clear and convincing" standard necessary to demonstrate

7

J.C. Penney contends that these omissions reflect an attempt by Mr. Iglesias to gain an unfair advantage and perpetuate a fraud on the Court.  (Doc. # 26 at 12).  Mr. Iglesias acknowledges these omissions as "regretful," but argues that they are innocent oversights resulting from confusion and misunderstanding rather than a calculated attempt to defraud the Court, and do not warrant the harshest sanction of dismissal with prejudice.  (Doc. # 28 at 3).

Therefore, the question before the Court is whether Mr. Iglesias's conduct gives rise to the type of "extreme circumstances" that warrant a dismissal with prejudice, the "sanction of last resort." <u>EEOC v. First Nat'l Bank</u>, 614 F.2d 1004, 1007 (5th Cir. 1980) ("When the disobedient party is a plaintiff, dismissal with prejudice is a sanction of last resort, applicable only in extreme circumstances.").

### i.  **Misrepresentations in Deposition Testimony**

J.C. Penney presents evidence that Mr. Iglesias failed to disclose during his deposition testimony his involvement in an automobile accident that occurred on August 24, 2008, as well as his subsequent medical treatment.[4]  (Doc. # 26 at 2-3).

---

fraud.

[4] J.C. Penney also asserts that Ms. Rafosu failed to disclose Mr. Iglesias's involvement in the August 24, 2008

## ii.  **Misrepresentations to Medical Providers**

J.C. Penney asserts that Mr. Iglesias misrepresented his medical history to various medical providers on different occasions. (Doc. # 26 at 2).

J.C. Penney first presents evidence of a patient history form allegedly filled out by Mr. Iglesias during a visit to the Tampa Bay Bone & Joint Center as evidence that Mr. Iglesias attempted to misrepresent his history of lower back pain. (Doc. # 26 at 5). A closer examination of the document reveals that in contrast to the other sections on the form, in which Mr. Iglesias either indicated an affirmative or negative response to the types of pain listed, Mr. Iglesias left a section referring to joint, neck and back pain entirely blank. (<u>Id.</u>, Def.'s Ex. J at 2).[5]

---

accident.  During Ms. Rafosu's deposition testimony, she failed to disclose Mr. Iglesias's involvement in the August 24, 2008 accident. (Doc. # 26, Def.'s Ex. B at 31-32). The Court notes Ms. Rafosu's misstatement but confines its analysis to Mr. Iglesias's misstatements because of his status as the party directly involved in the accident.

[5]  J.C. Penney also contends that Mr. Iglesias misrepresented his condition to medical providers who treated him for the subsequent August 24, 2008, accident, which he filed a claim for with separate counsel. (Doc. # 26 at 3-4). The Court determines that it need not consider it in ruling on a motion to dismiss. A dismissal of claims for fraud on the court should be limited to those claims to which the fraud pertained. <u>Arzuman v. Saud</u>, 843 So.2d 950, 953 n.24 (Fla. 4th DCA 2003). Since the treatment is unrelated to the case at

J.C. Penney further points to evidence that Mr. Iglesias misrepresented his history of lower back pain to Dr. Gary Moskovitz, his treating physician who rendered a medical opinion and assigned Mr. Iglesias an eight percent impairment rating. (Doc. # 26 at 4). J.C. Penney also maintains that Mr. Iglesias failed to disclose his August 24, 2008, accident to its expert medical witness. (Doc. # 26 at 3).

J.C. Penney claims it is unfairly prejudiced because medical opinions and percentage ratings to Mr. Iglesias's back and shoulder have been assessed without the benefit of information pertaining to prior and subsequent accidents. (Doc. # 26 at 4-5). J.C. Penney maintains that it will now be forced to incur significant additional expense in re-deposing its expert medical witness in order to render a new opinion in light of Mr. Iglesias's August 24, 2008, accident. Id. at 3. As discussed below, the Court determines that Mr. Iglesias's

---

bar, it is collateral in nature, and its alleged omission is unable to support a dismissal for fraud. See, e.g., Armakan v. McLean, 800 So.2d 314 (Fla. 3d DCA 2001)(reversing a dismissal for fraud on the court where plaintiff's failure to disclose a prior knee surgery involved the knee not alleged to be injured in the subject accident). Moreover, the Court notes that the strength of the evidentiary exhibit, which consists of a patient information form that denies involvement in previous accidents, is questionable, as it is unclear whether Mr. Iglesias is the individual who actually filled out the form. (Doc. # 26 at 3-4).

omission of his August 24, 2008, accident to his treating physicians and J.C. Penney's expert medical witness materially prejudices J.C. Penney's case, and J.C. Penney's costs in re-deposing Mr. Iglesias's treating physicians and J.C. Penney's expert medical witness shall be borne by Mr. Iglesias and Ms. Rafosu.

### iii.  Misrepresentations in Interrogatory Responses

J.C. Penney contends that Mr. Iglesias failed to disclose his involvement in an automobile accident that occurred on August 24, 2008, his subsequent medical treatment, and a criminal conviction for the transport of illegal aliens in his interrogatory responses.  (Doc. # 26 at 2-3, 6).

After a careful examination of the record, the Court determines that Mr. Iglesias's omissions evince an intent to defraud the Court.  However, as discussed above, the interrogatory responses containing these omissions are missing the signed and notarized jurat page, which precludes the Court from considering it in ruling on a motion to dismiss.

### iv.  Analysis

The only plausible explanation Mr. Iglesias offers to negate the fraudulent intent that his inconsistencies suggest is that Mr. Iglesias is an immigrant who does not speak fluent English and is unfamiliar with U.S. legal procedure and

terminology.  (Doc. # 28 at 7, 10).  In deposition testimony,
Mr. Iglesias has asserted his own limited English skills, as
well as his wife's, stating that "[Ms. Rafosu] speaks more
English than [Mr. Iglesias does,]" but that her skills are
still limited such that taking her deposition would require a
translator.  (Doc. # 30 at 36-37).

The Court can characterize this argument as nothing more
than disingenuous.  A review of the complete deposition
transcripts filed by J.C. Penney (Docs. ## 30-32), which the
Court ordered on October 21, 2010 (Doc. # 29), reveals that a
translator was present for both Mr. Iglesias and Ms. Rafosu
during their depositions.  (Docs. ## 30 at 3; 32 at 3).

J.C. Penney argues that this case is similar to <u>Baker v.
Myers Tractor Services, Inc.</u>, 765 So.2d 149 (Fla. 1st DCA
2000), <u>Morgan v. Campbell</u>, 816 So.2d 251 (Fla. 2nd DCA 2002),
and <u>Distefano v. State Farm Mut. Auto. Ins. Co.</u>, 846 So.2d 572
(Fla. 1st DCA 2003).  All three cases affirm the trial court's
dismissal of plaintiffs' actions as a sanction for providing
materially false or misleading testimony concerning central
aspects of their medical histories during discovery.[6]

_____

[6] J.C. Penney also cites a number of federal cases
finding dismissal appropriate when a party fabricates evidence
to substantiate its claims.  (Doc. # 26 at 8).  However, in
the case at bar, J.C. Penney does not accuse Mr. Iglesias of

The nature and degree of the misrepresentations are very similar to the case at bar.  Courts have drawn distinctions on similar instances of misrepresentations where the plaintiffs' misstatements resulted from some type of incapacity rather than an intent to deceive.  See Arzuman, 843 So.2d 950 (reversing a dismissal for fraud on the court where the inconsistencies and misstatements of plaintiff, an immigrant of Armenian descent who did not learn to speak English until he was twenty-five years old, reflected a lack of understanding rather than an attempt to perpetuate a fraud on the court); Simmons v. Henderson, 745 So.2d 1031 (Fla. 2nd DCA 1999)(reversing a dismissal for fraud on the court where plaintiff's misstatements were the result of confusion)). However, the Court is emphatically unconvinced that such circumstances are present in the case at bar.  Particularly with the presence of a translator, the Court is unable to discern any explanation for Mr. Iglesias's disingenuous

---

fabricating evidence; instead, J.C. Penney premises its motion to dismiss on an array of inconsistencies, actions that are less egregious than the fabrication of evidence.  See Rozier v. Ford Motor Co., 573 F.2d 1332, 1338 (11th Cir. 1978) (citations omitted) ("Generally speaking, only the most egregious misconduct, such as . . . fabrication of evidence by a party . . . will constitute a fraud on the court.  Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court.").

responses to such straightforward and point-blank questions other than an intent to deceive and defraud the Court.

Mr. Iglesias's testimony during the hearing on November 9, 2010, reinforced the Court's reservations regarding Mr. Iglesias's candor with the Court. The Court found Mr. Iglesias capable of understanding and answering the questions posed to him and did not find evidence of any incapacity to suggest his inconsistencies are the result of confusion or misunderstanding, particularly with the presence of a translator.

Nonetheless, while Mr. Iglesias's misrepresentations during his deposition testimony and to his medical providers are certainly egregious, these instances alone, without the verified interrogatory responses, are insufficient to surpass the "clear and convincing" threshold.

In contrast to Mr. Iglesias's misstatements during the heat of a deposition, Mr. Iglesias's misrepresentations in his interrogatory responses are unequivocal. In responding to the interrogatory questions, Mr. Iglesias presumably answered the questions at his own convenience, was not responding to live questioning by an adverse party, and almost certainly benefitted from the company of his attorney, who surely was aware of his limited English skills.

14

Since dismissal for fraud is appropriate only in cases where an unconscionable scheme to subvert the judicial process is evinced by "clear and convincing" evidence, and the Court determines that these circumstances are not present in the case at bar, dismissal is not appropriate.   Although the discrepancies J.C. Penney relies on do not justify dismissal, they will provide J.C. Penney's attorney with potent topics for cross-examination and fertile ground for impeachment.   See Bologna v. Schlanger, 995 So.2d 526, 538 (Fla. 5th DCA 2008) ("[P]oor recollection, dissemblance, even lying, can be well managed through cross-examination.").

Having declined to grant J.C. Penney's motion to dismiss, the Court now turns to J.C. Penney's request for sanctions.

## C.   Motion for Sanctions

J.C. Penney moves for sanctions in the amount of $13,000. This amount includes J.C. Penney's costs in re-deposing Mr. Iglesias's treating physicians and J.C. Penney's expert medical witness, as discussed above.   Upon due consideration, the Court grants this request in part.   (Doc. # 36 at 2-3). The Court determines that monetary sanctions are appropriate; however, the amount of sanctions requested by J.C. Penny is not supported by an itemized fee ledger or any other document. Without such documentation, the Court cannot assess whether

15

the amount requested is reasonable.  The Court will give the parties until December 1, 2010, to internally resolve the issue of the amount of monetary sanctions that should be paid to J.C. Penny in this matter.  If the parties cannot agree upon an amount by December 1, 2010, the Court will refer the issue to the Magistrate Judge.

Thus, upon due consideration, the Court denies the motion to dismiss and grants in part and denies in part the emergency motion to compel jurat page and for sanctions.

Accordingly, it is

**ORDERED, ADJUDGED, and DECREED:**

(1)   J.C. Penney's motion to dismiss complaint for material misrepresentation and fraud upon the court (Doc. # 26) is **DENIED.**

(2)   J.C. Penney's motion to compel jurat page and for sanctions (Doc. # 36) is **GRANTED IN PART** and **DENIED IN PART** as specified above.

(3)   The parties have until and including December 1, 2010, to resolve the amount of sanctions due to J.C. Penny without Court intervention.  If the parties cannot agree upon an amount by December 1, 2010, the Court will refer the issue to the Magistrate Judge.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this

16

<u>19th</u> day of November 2010.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record